# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

RICHARD HOLLINGSWORTH,    :

    Plaintiff,    :

vs.    :    CA 12-0481-CG-C

PAMELA BARBER, M.D.,    :

    Defendant.

## REPORT AND RECOMMENDATION

This cause is was referred for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b), on the complaint (Doc. 1), the motion for summary judgment filed by defendant Dr. Pamela Barber (Doc. 14; *see also* Doc. 15 (conversion order)), and plaintiff's response in opposition (Doc. 16). Upon consideration of the foregoing pleadings, it is recommended that the defendant's motion for summary judgment be **GRANTED**.

## FINDINGS OF FACT

Plaintiff, Richard Hollingsworth ("Hollingsworth"), was transferred to the Holman Correctional Facility ("Holman") from the Kilby Correctional Facility ("Kilby") on June 13, 2012. (*Compare* Doc. 16, at 1 *with* Doc. 14, Exhibit A, Affidavit of Dr. Pamela Barber, at ¶ 4.) Upon his arrival at Holman, Hollingsworth notified medical personnel—including the Medical Director, Dr. Barber—that he had been suffering from a right inguinal hernia since January 17, 2012 (*see* Doc. 14, Exhibit A, Barber aff., at ¶ 4) and contends in his complaint that he told the Correctional Medical Services ("CMS") personnel that the treatment "he was receiving was not reducing his pain." (Doc. 1, at 4; *see* Doc. 16, Affidavit of Bernard Jemison (Jemison transferred from Kilby

to Holman with Hollingsworth on June 13, 2012, "noticed that Hollingsworth appeared to be in extreme pain[,]" and heard Hollingsworth notify medical personnel of his hernia and request "immediate pain relief and surgery.").) Dr. Barber's evaluation confirmed Hollingsworth's assertion that he was suffering from a right inguinal hernia. (*See* Doc. 14, Exhibit A, Barber aff., at ¶ 4.) "When Mr. Hollingsworth arrived at the Holman Correctional Facility, he was examined with regard to his hernia for signs of non-reducibility, strangulation, or dissection into the scrotum." (*Id*. at ¶ 10.) The screening notes reflect that Hollingsworth's right inguinal hernia was reducible (*see* Doc. 14, Exhibit A, at 6) and it appears that the plaintiff was treated, upon transfer, with the same pain medication—Motrin—he received at Kilby (*compare id. with* Doc. 16, at 2 (plaintiff's averments that while at Holman his pain medication was increased from Motrin to narcotic pain medication)).[1]

It was not until thirty-three (33) days after Hollingsworth's arrival at Holman, on July 16, 2012, that the plaintiff submitted his first medical services request form relating to his hernia. (Doc. 14, Exhibit A, at 12.) Therein, plaintiff complained that the hernia was causing him severe pain and interfering with his ability to use "the bathroom[.]" (*Id.; see also id.* ("It is sliding closer and closer towards my testicles.").) Hollingsworth was assessed by a nurse on July 19, 2012, and referred to Dr. Barber (*id.; see also id.* at 13*)*; the defendant prescribed Toradol[2] and Robaxin[3] for a period of fourteen (14) days

---

[1] Indeed, plaintiff makes no allegations that the medical staff at Holman changed any aspect of the treatment plan initiated at Kilby. (*Compare* Doc. 1 *with* Doc. 16.) That treatment plan consisted of the following: "[A] truss belt, pain medication, and certain limited profiles which included a bottom bunk profile, and a limited lifting profile." (Doc. 14, Exhibit A, Barber aff., at ¶ 8.)

[2] Toradol is indicated for the short-term management of moderately severe acute pain. http://www.rxlist.com/toradol-drug.html (last visited February 5, 2014).

(*id*. at 31). In addition, four days later, on July 23, 2012, Dr. Barber requested a surgical consult for Hollingsworth because her examination had revealed that plaintiff's now "large" right inguinal hernia was drifting into his right testicle. (*See id.* at 24-25.) The request for an off-site surgical consult was approved on July 25, 2012. (Doc. 14, Exhibit A, Barber aff., at ¶ 11.)[4]

On August 4, 2012, Hollingsworth submitted another health services request form; he complained that he was in extreme pain, that his hernia was sliding toward his testicles, and that his pain medication had been reduced.[5] (*Id*. at 11). Hollingsworth was evaluated on August 6, 2012 and prescribed a 10-day course of Toradol and Robaxin. (*Id*. at 29.)[6]

Hollingsworth was evaluated by surgeon Dr. Grover T. Paul on August 16, 2012. (Doc. 14, Exhibit A, at 23). Dr. Paul recommended surgery to repair plaintiff's hernia. (*Id*.) Three days later, on August 19, 2012, Hollingsworth submitted another health

---

[3]     Robaxin is a muscle relaxant. http://www.drugs.com/robaxin.html (last visited February 5, 2014).

[4]     This action was initiated on July 27, 2012. (*See* Doc. 1.)

[5]     The medical records do reflect that Hollingsworth was prescribed Motrin on August 1, 2012; however, this prescription appears to relate to another malady inasmuch as plaintiff was also prescribed Guaifenesin (Doc. 14, Exhibit A, at 30), an expectorant, http://www.drugs.com/guaifenesin.html (last visited February 5, 2014). It makes sense that the prescription of Motrin had to do with another health condition, as opposed to plaintiff's hernia, since this prescription was discontinued when Toradol and Robaxin were again prescribed for Hollingsworth on August 6, 2012. (Doc. 14, Exhibit A, at 29.)

[6]     The next day, on August 7, 2012, Hollingsworth filed—with the medical staff—a grievance regarding his continued requirement to pay a co-pay in order to be seen by Dr. Barber and also requesting a refund of his co-pay. (*Id*. at 36.). An undated response appears on this same document stating that Hollingsworth would be required to pay a co-pay since his condition was not considered a "chronic problem." (*Id*.)

3

services request form; he complained of being in severe pain and asked why his pain medication had been "cut off[.]" (*Id*. at 9.)[7]

On August 22, 2012, Hollingsworth's medications were renewed for an additional ten days. (*Compare id.* at 9 *with id.* at 29.)[8] That same day, Dr. Barber reviewed the surgical consultation report and requested that Hollingsworth receive surgery for his hernia. (*Compare* Doc. 14, Exhibit A, Barber aff., at ¶ 11 *with* Doc. 14, Exhibit A, at 21-23 & 29.) The records generated by Barber on August 22, 2012 reflect that the request for

---

[7] This same day, Hollingsworth sent in a medical grievance stating he had made "several medical grievances with[out] reply," and that his "medicine [was] constantly being cut off[.]" (*Id*. at 34.) A response to this medical grievance was issued on August 22, 2012 by Director of Nursing Bennie Andrews:

> [Y]our request for a consultation was processed on 7-23-2012. You were seen by the surgeon on 8-16-2012. We are now waiting for them to schedule you for your surgery and notify us. We have no control over when that will be. Dr. Barber has been very generous with providing you with pain medication despite the fact that you should not be experiencing any pain as a result of a non-strangulating hernia. Dr. Barber only prescribes pain medication for 14 days. After that you must be re-evaluated. That means you must sign up for sick call. If your condition should worsen and cannot wait for sick call please notify a security officer. We are processing your request as fast as we possibly can. We apologize for any inconvenience.

(*Id*, at 35.) The Director of Nursing's response prompted an "appeal" from Hollingsworth; the inmate pointed out that he depended upon CMS to make his pain bearable until his surgery. (*Id*. at 32.) "[P]lease refund my money, and place me on medication till this problem is solved. I have no idea when, or if, the surgeon is going to perform surgery." (*Id*.) Andrews made the following undated response to plaintiff's appeal: "The doctor prescribes pain medication for a 14 day period only. After that you must be re-evaluated. This is the policy for now. You must sign up for sick call and pay the associated co-pay until there is a change in that policy. You cannot [be] habitually administered pain medication without an evaluation." (*Id*. at 33.)

[8] The medical records reflect that the next day, the Toradol and Robaxin were renewed for 14 days. (*Id*. at 29.) Presumably, Barber's orders on August 23, 2012—for 14 days of the foregoing medications—was meant to override her orders of August 22, 2012—for 10 days of Toradol and Robaxin. (*See id.*)

surgery was being made, despite there being no strangulation, because the hernia was big and was migrating into the right testicle. (Doc. 14, Exhibit A, at 21.)[9]

On September 10, 2012, Hollingsworth submitted his fourth health services request form asking for a refill of pain medication that had been "cut off for several days." (*Id*. at 8.)[10] Hollingsworth was evaluated by a nurse on September 11, 2012 (*id*. at 7-8) and was prescribed Toradol for fourteen additional days on September 12, 2012 (*id*. at 28).

On September 26, 2012, thirty-four (34) days after Hollingsworth's surgery was approved and sixty-five (65) days after Dr. Barber requested a surgical consult, Hollingsworth received laparoscopic hernia surgery. (Doc. 14, Exhibit A, at 15.)

> The peritoneum overlying the internal ring was incised. The preperitoneal space bluntly dissected. Cooper's ligament, iliopubic tract and the cord structures were identified. Cord structures were bluntly dissected from the hernia sac, which was reduced in total.

(*Id.*) There were no complications with the surgery, no specimens taken, and plaintiff was transferred to recovery in good condition. (*Id.*) Hollingsworth was discharged from North Baldwin Infirmary on the same date he was admitted for surgery. (*Id.*)

---

[9] Dr. Barber's request was approved on August 23 or 24, 2012. (*Compare* Doc. 14, Exhibit A, Barber aff., at ¶ 12 *with* Doc. 14, Exhibit A, at 20.)

[10] The focus of plaintiff's complaints is that he was made to go without pain medication for numerous days at a time between June 13, 2012 and September 26, 2012 because "he was only allowed 14 days of pain medication each visit[] and therefore was forced off his medication until he could once again see the medical staff[.]" (Doc. 16, at 2.) That pain medication was prescribed for no more than 14-day periods was clear clinic policy. (*See* Doc. 14, Exhibit A, at 33 ("The doctor prescribes pain medication for a 14 day period only. After that you must be re-evaluated. This is the policy for now. You must sign up for sick call and pay the associated co-pay until there is a change in that policy. You cannot habitually [be] administered pain medication without an evaluation.").) Thus, Hollingsworth is correct that there are "gaps" where he was without pain medication for his hernia. (*See id.* at 28-30.)

## CONCLUSIONS OF LAW

**A.     Summary Judgment Standard**.  Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  FED.R.CIV.P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."); *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) ("[S]ummary judgment is appropriate even if '*some* alleged factual dispute' between the parties remains, so long as there is 'no *genuine* issue of *material* fact.'").

The party seeking summary judgment has the initial responsibility of informing the court of the basis for the motion and of establishing, based upon the discovery instruments outlined in Rule 56(c), that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Allen v. Board of Public Educ. for Bibb County*, 495 F.3d 1306, 1313 (11th Cir. 2007) ("The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."). Once this initial demonstration is made, the "responsibility then devolves upon the non-movant to show the existence of a genuine issue . . . [of] material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993); *see also Allen*, *supra*, 495 F.3d at 1314 ("'When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and show by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial.'"); *see Comer v. City of Palm Bay, Florida*, 265 F.3d 1186, 1192 (11th Cir. 2001) ("Once

the moving party discharges its initial burden of showing that there is an absence of evidence to support the non-moving party's case, the non-moving party must specify facts proving the existence of a genuine issue of material fact for trial confirmed by affidavits, '"depositions, answers to interrogatories, and admissions on file."'").

> Forbidding reliance upon pleadings precludes a party from "choos[ing] to wait until trial to develop claims or defenses relevant to the summary judgment motion." . . . This effectuates the purpose of summary judgment which "'is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" . . . Thus, "mere general allegations which do not reveal detailed and precise facts" will not prevent the award of summary judgment upon a court's determination that no genuine issue for trial exists.

*Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir.), *cert. denied sub nom. Jones v. Resolution Trust Corp.*, 516 U.S. 817, 116 S.Ct. 74, 133 L.Ed.2d 33 (1995); *see also LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir. 1998) ("[The nonmoving party] must raise 'significant probative evidence' that would be sufficient for a jury to find for that party."). In other words, there is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see Comer, supra*, 265 F.3d at 1192 ("Summary judgment is required where the non-moving party's response to a motion is merely 'a repetition of his conclusional allegations' and is unsupported by evidence showing an issue for trial.").

In considering whether the defendants are entitled to summary judgment in this case, the Court has viewed the facts in the light most favorable to the plaintiff. *Comer, supra*, 265 F.3d at 1192 ("We view the evidence and all factual inferences raised by it in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-moving party.").

> The requirement to view the facts in the nonmoving party's favor extends only to "genuine" disputes over material facts. A genuine dispute requires more than "some metaphysical doubt as to the material facts." A "mere scintilla" of evidence is insufficient; the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment.

*Garczynski, supra*, 573 F.3d at 1165 (internal citations omitted). In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp., supra,* 43 F.3d at 599.

**B.     Plaintiff's Claim of Deliberate Indifference and Deprivation of Treatment for a Serious Medical Need**.

Hollingsworth contends that Dr. Barber was deliberately indifferent to his serious medical condition—a right inguinal hernia—by allowing him to remain in severe pain despite "being informed by plaintiff that his hernia was causing devastating pain and restlessness, and had been for a period of months." (Doc. 16, at 1; *see also* Doc. 1, at 4.) In making this claim, the undersigned regards Hollingsworth as alleging both that he should have had no "gaps" in receipt of his narcotic pain medication and that he should have received his surgery earlier than September 26, 2012. (*See id.*)

To prevail upon a claim of deliberate indifference to a serious medical need, an inmate must "shoulder three burdens." *Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir. 2007).[11] First, he must establish the objective component by showing that he has a serious medical need. *Goebert*, 510 F.3d at 1326 (citation omitted). Next, he must

---
[11] *See Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (when seeking relief based on deliberate indifference of responsible officials, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts), *cert. denied*, 531 U.S. 1077, 121 S.Ct. 774, 148 L.Ed.2d 673 (2001).

establish the subjective component "by showing that the prison official acted with deliberate indifference" to his serious medical need. *Id.* (citation omitted). And, finally, he "must show that the injury was caused by the defendant's wrongful conduct." *Id.* (citation omitted).

As recognized in *Goebert, supra,* "[a] medical need that is serious enough to satisfy the objective component 'is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" 510 F.3d at 1326 (citation omitted). The subjective component "requires a showing that a prison official acted with deliberate indifference to the prisoner's serious medical need." *Goebert*, 510 F.3d at 1326. Deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994). In addition, a plaintiff must prove that the prison official disregarded the risk of serious harm by conduct that amounts to more than gross negligence. *Goebert, supra*, 510 F.3d at 1327 (citation omitted). This is because "deliberate indifference" entails more than mere negligence. *Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003); *see also Townsend v. Jefferson County*, 601 F.3d 1152, 1158 (11th Cir. 2010).

Hollingsworth arrived at Holman on June 13, 2012 with a right inguinal hernia. Hollingsworth was immediately evaluated and allowed to continue his course of treatment provided to him at Kilby Correctional Facility. (*Compare* Doc. 14, Exhibit A, Barber aff. *with* Doc. 14, Exhibit A, at 6.) Hollingsworth submitted his first medical services request form 33 days after his arrival at Holman on July 16, 2012. (*Id*. at 12). Hollingsworth was evaluated by medical staff three days later, and was prescribed a

9

narcotic pain medication, Toradol, and Robaxin by Dr. Barber. (*Id*. at 12-13.) Four days after the evaluation, on July 23, 2012, Dr. Barber requested a surgical consultation for Hollingsworth. (*Id*. at 24-25.) The request was approved on July 25, 2012 (Doc. 14, Exhibit A, Barber aff., at ¶ 11) and twenty-two days later, on August 16, 2012, Hollingsworth was evaluated by a surgeon who recommended surgery (*See* Doc. 14, Exhibit A, at 23). Five days after that, Dr. Barber submitted a request for surgery (*id.* at 20) that was approved on August 23 or 24, 2012 (*compare id. with* Doc. 14, Exhibit A, Barber aff., at ¶ 12). Thirty-three days after the approval for surgery, Hollingsworth received surgery on his hernia. (*See id*. at 15-19). Although Hollingsworth was initially diagnosed with a hernia on January 17, 2012, the entire process involving Dr. Barber spans, at the outside, a mere 107 days. (*See* Doc. 14, Exhibit A, 1-36.) During this entire period, plaintiff was prescribed pain medication,[12] including Toradol. When switched to the narcotic pain medication, CMS policy limited the dispensing of that narcotic pain medication (Toradol) to 14 days between evaluations and this resulted in some "gaps" in plaintiff's receipt of same due to Hollingsworth's documented desire to have unlimited access to the narcotic without re-evaluation and payment of a co-pay for re-evaluation.

In a recent unpublished decision, the Eleventh Circuit upheld a district court's grant of summary judgment to defendants where the "[e]vidence showed that [the inmate] received treatment for his hernia symptoms, including receiving pain medication and a hernia truss[,] . . . [the doctor] met with [the inmate] at least three times and determined that [the inmate's] hernia was non-strangulated and posed no risk[,] . . . [but nonetheless] submitted a request for elective surgery to the prison's

---

[12] He also received a muscle relaxer, Robaxin, along with the Toradol.

Utilization Committee[] . . . [which was] approved . . . [and resulted in] hernia surgery about six months after his initial complaint to prison staff." *Jackson v. Jackson*, 456 Fed. Appx. 813, 814-15 (11th Cir. Jan. 31, 2012).[13] The court noted that "it is common medical practice to postpone surgery until a hernia becomes strangulated," such that surgery on a non-strangulated hernia would be considered "elective." *Id*. at 814. Finally, the *Jackson* court noted that when the inmate's surgery was performed, the hernia was still non-strangulated and thus had not worsened as a result of the treatment plan. *See id*. at 815.

Taking all of these matters into consideration, the court held that "[t]he care [the inmate] received was adequate and certainly not 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' " *Id*., *quoting Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991). The Eleventh Circuit further held that any "delay in receiving surgery was because the hernia remained treatable without surgery and posed no risk to [the inmate's] health." *Id*. "Moreover, the delay did not worsen [the inmate's] condition." *Id., citing Mann v. Taser Int'l., Inc*., 588 F.3d 1291, 1307 (11th Cir. 2009). "That [the inmate] felt he should have had surgery earlier than he did is *insufficient* to support a deliberate indifference claim." *Id*. (emphasis added; citations omitted). Thus, no Eighth Amendment violation was found in *Jackson*.

As in *Jackson*, in this case Hollingsworth received treatment for his hernia upon his transfer to Holman from Kilby on June 13, 2012, including pain medication and the continued use of a truss belt. In addition, Hollingsworth saw medical personnel—including Dr. Barber—on numerous occasions following his transfer. His pain

---

[13] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

medication was upgraded to Toradol (an analgesia at the opioid level)[14] on July 23, 2012, after he presented to the clinic and his hernia was found to have enlarged and to be sliding into his right testicle. In addition, despite there being no evidence of strangulation, Hollingsworth was referred by Dr. Barber to a general surgeon and then the Medical Director recommended that plaintiff receive laparoscopic hernia surgery following her receipt of the surgeon's recommendation that surgery be performed. Surgery was ultimately performed by Dr. Paul on September 26, 2012. The operative report makes no mention of the finding of a strangulated hernia; indeed, the surgery was performed without any complications or unexpected issues and Hollingsworth was discharged on the same date of his admittance for surgery.

In light of the foregoing, this Court, like the Eleventh Circuit in *Jackson, supra*, concludes that the care Hollingsworth "received was adequate and certainly not 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" 456 Fed.Appx. at 815 (citation omitted). Any "gaps" in plaintiff's receipt of Toradol arose as a result of Dr. Barber's policy of only prescribing narcotic pain medication for periods of at most 14 days before requiring re-evaluation by medical staff and plaintiff's desire to have unlimited access to the narcotic without re-evaluation and payment of a co-pay for re-evaluation. Moreover, there is simply no evidence that such "gaps" worsened plaintiff's condition. Because "[i]t is not deliberate indifference for a prison medical provider to require a prisoner to pay a co-payment before receiving care when he has the ability to pay[,]" *Thomas v. Talley,* 2013 WL 2635461,*13 (N.D. Ala. Jun. 10, 2013); *see also Wedgeworth v. Corizon Health, Inc.,* 2013 WL 4791619, *2 n.2 (S.D. Ala. Sept. 6, 2013) ("[T]he imposition of co-payment fees upon

---

[14] *See* http://www.rxlist.com/toradol-drug.html (last visited February 5, 2014).

an inmate for non-emergency medical care is constitutional because it does not deprive [the] prisoner of any protected constitutional right."); *Alverson v. Allen,* 2012 WL 3631132, *13 (M.D. Ala. Aug. 23, 2012) ("The mere fact that the plaintiff is assessed co-payments for an examination by a doctor or nurse does not in any way deprive the plaintiff of a protected right, privilege or immunity."), and Dr. Barber consistently prescribed plaintiff Toradol on every occasion plaintiff returned to the prison clinic for re-evaluation, any "gaps" in Hollingsworth's receipt of narcotic pain medication resulted from a difference in medical judgment between Hollingsworth and Barber, not the defendant's deliberate indifference. *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir.1995) (whether defendants "should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment"); *Harris*, 941 F.2d at 1505 (explaining that a difference in medical opinion between the prison's medical staff and the inmate about the inmate's course of treatment will not support a claim of cruel and unusual punishment).

Additionally, it was only a little over a month after Hollingsworth arrived at Holman, that is, on July 23, 2012, that Dr. Barber began a recommendation process which culminated in plaintiff's laparoscopic hernia surgery on September 26, 2012. Given the non-existence of evidence that any alleged "delay" in receiving surgery worsened plaintiff's condition, along with clear evidence that the prison staff was dependent upon the surgeon's office for the actual scheduling of Hollingsworth's surgery, that Hollingsworth may have felt he "should have had surgery earlier than he did is insufficient to support a deliberate indifference claim." *Jackson, supra,* 456 Fed.Appx. at 815. Accordingly, summary judgment is properly entered in favor of Dr.

Barber because the record does not demonstrate that the doctor's conduct amounted to a violation of the Eighth Amendment.

## CONCLUSION

Based upon the foregoing, the moving defendant's motion for summary judgment (Doc. 14; *see also* Doc. 15 (conversion order)) is due to be **GRANTED**.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D.ALA. L.R. 72.4. The parties should note that under Eleventh Circuit precedent, "the failure to object limits the scope of [] appellate review to plain error review of the magistrate judge's *factual findings*." *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013) (emphasis in original). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 7th day of February, 2014.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**